# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

FILED at 4 O'clock & 03 min P M
Date 8-7-07
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia

In the matter of: )
                  )      Chapter 7 Case
DENNIS W. DRIGGERS )
                  )      Number 05-61207
         Debtor   )

## MEMORANDUM AND ORDER ON MOTION TO REOPEN CASE

The Debtor has filed a Motion to Reopen his Chapter 7 case to add creditors previously omitted from his schedules, with the ultimate goal of discharging those debts. *See* Dckt. No. 29 (May 31, 2007). An objection was filed to the Motion by one of those creditors, Ricky Lane. A hearing on this matter was held on July 17, 2007. Based on applicable authorities, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Having previously met Lane during a hunting trip, the Debtor approached him in March 2005 seeking to borrow $22,000.00 for a period of up to a year. The Debtor offered a substantial return on the loan, in the range of $5,000.00 to $8,000.00. Because Lane considered that rate of return to be substantially better than any other he could obtain through other investments, and because he trusted and liked the Debtor on a personal level, he made arrangements for a cashier's check payable to the Debtor to be issued by his bank. The Debtor traveled to the bank, obtained the cashier's check, signed the endorsement, and

AO 72A
(Rev. 8/82)

received the $22,000.00 in cash. There was no promissory note or any other written agreement. The Debtor verbally agreed that the loan would be repaid within a twelve-month period with the aforementioned substantial gain, the exact amount of which was not fixed between the parties. Although the Debtor did not remember receiving a check, the cashier's check was payable only to the Debtor individually, listed Lane as the remitter, and was endorsed by the Debtor.

In his deposition,[1] the Debtor testified that he took the $22,000.00 and delivered it to Delta Building Systems (DBS), by whom he was employed but in which he had no interest as owner, shareholder, or officer. He testified that DBS, owned by Bill Bailey and Benjamin Eichholz, used the money for additional working capital. There is some dispute as to whether Lane was informed that DBS would receive the proceeds of his loan. Lane testified that he had never heard of DBS, *see* Dckt. No. 55 (July 17, 2007), but the Debtor stated in his deposition that he discussed the company with Lane when seeking the loan. *See* Debtor's Deposition, pgs. 10-11, 27-28. He admitted, however, that he did not tell Lane that he would not be personally liable for repayment. *See* Debtor's Deposition, p. 28.

Lane contacted the Debtor sometime in May or June 2006 to collect loan payments. Over the next several weeks, the Debtor repaid $1,500.00 in cash on three separate occasions. Although Lane had to resort to making numerous telephone calls to the

---

[1] By stipulation, the Debtor's deposition from July 10, 2007, was admitted as evidence at the hearing.

Debtor to remind him that payments were due, he was always satisfied by the Debtor's explanation as to the delay because the Debtor traveled extensively in his work and was not always available. Between July 2005 and November 2006, Lane called the Debtor at least twice a month and left numerous messages in addition to speaking with him at least three or four times seeking repayment of the loan. On each occasion, the Debtor asked for patience and assured Lane that payments would be forthcoming.

On October 14, 2005, the Debtor filed a Chapter 7 bankruptcy and did not list Lane as a creditor. Accordingly, Lane received no notice of any bankruptcy proceedings, and the Debtor received a discharge on April 20, 2006. Post-petition, Lane continued to call multiple times each month to collect on the loan. In his deposition, the Debtor acknowledged that Lane never contacted anyone other than him for repayment. *See* Debtor's Deposition, pgs. 25, 28, 31-33.

It is apparent from the foregoing facts that because the Debtor filed his case in October 2005, many of Lane's contacts with him seeking repayment came after the bankruptcy case was filed, but at no time did the Debtor ever inform Lane that he was in bankruptcy. *See* Debtor's Deposition, p. 25. Finally, in November 2006, Lane became frustrated with the Debtor's refusal to respond to his payment demands and hired Mike Bohannon, who operates a collection and repossession agency representing scores of clients. Bohannon continued the collection efforts and at one point was able to extract a $100.00 payment from the Debtor. At no time did the Debtor ever tell Bohannon that he was in

AO 72A
(Rev. 8/82)

3

bankruptcy. *See* Debtor's Deposition, p. 39. The Debtor ultimately told Bohannon that part of the money he received from Lane went to Bailey or DBS, *see* Debtor's Deposition, p. 32, but in his dealings with Lane, he never revealed that he would not be personally indebted on the obligation. *See* Debtor's Deposition, p. 28.

The Debtor contends that he should be permitted to reopen his Chapter 7 case because the omission of Lane as a creditor was inadvertent and/or based on an honest belief that he did not personally owe Lane any money. He bases his contention on his testimony that he approached Lane for the loan because DBS was trying to raise money for operating expenses and that he was asked to find people to provide that source of funding. *See* Debtor's Deposition, p. 10. The Debtor testified that he took the cash and turned it over to DBS's office. Although he did not remember whether he gave it to Bailey or someone else, he said it most likely was delivered to Ashley Brown, the office manager. *See* Debtor's Deposition, pgs. 13-15. The Debtor acknowledges that he had no ownership interest in DBS and does not recall, or does not know, if he had any authority to obligate DBS for repayment of the monies that were borrowed. *See* Debtor's Deposition, p.16. He stated that the three $1,500.00 payments to Lane came in cash from DBS. *See* Debtor's Deposition, pgs. 17-18.

When Bohannon pressed him for repayment, the Debtor talked with Bailey, who would not commit as to whether the repayment obligation was his or DBS's. In any event, Bailey told him that he did not have the money to help. *See* Debtor's Deposition, pgs. 21-22. At all times when Lane contacted him and later when Bohannon attempted to collect

the money, the Debtor acknowledged that he understood that Lane believed that he was personally responsible for the repayment, not DBS. See Debtor's Deposition, pgs. 32-33.

Ultimately, Lane filed suit against the Debtor in January 2007, which the Debtor answered in February 2007 denying any liability on an obligation of $17,400.00 plus interest. The Debtor then contacted his bankruptcy counsel who filed the motion to reopen the case and a proposed amendment to his schedules listing Lane as a creditor. See Dckt. No. 29 (May 31, 2007) (Motion to Reopen Case); Dckt. No. 30 (May 31, 2007) (Amendment to Petition). Lane filed an objection to the Debtor's motion. See Dckt. No. 38 (June 11, 2007).

## CONCLUSIONS OF LAW

According to 11 U.S.C. § 350(b), "a case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." Whether a bankruptcy case is to be reopened is reserved to the sound discretion of the bankruptcy court, which is guided by the Bankruptcy Code and equitable considerations. In re Barfield, 285 B.R. 559, 560-61 (Bankr. S.D. Ga. 2002) (Davis, J.). Based on the reasoning of the Eleventh Circuit Court of Appeals's decision in Samuel v. Baitcher (In re Baitcher), 781 F.2d 1529 (11th Cir. 1986), however, I have previously concluded that a debtor who seeks to reopen a Chapter 7 case to schedule an omitted creditor must demonstrate that the omission occurred in good faith and was not the result of fraud or intentional design. See In re Garrett, 266 B.R. 910, 913-16 (Bankr. S.D. Ga. 2001) (Davis, J.); see also In re McDaniel, 217 B.R. 348, 356 n.14 (Bankr. N.D. Ga. 1998) ("As the

Eleventh Circuit noted in its opinion, debtors seeking to reopen a no-asset case and amend their schedules must independently prove the absence of any intentional design or fraudulent omission on their part.").

I conclude that the Debtor has failed to carry the burden of proof in demonstrating that his omission of Lane from his schedules was in good faith or through an inadvertent mistake. As mentioned earlier, there is a dispute between the Debtor and Lane as to whether the Debtor fully disclosed to Lane the existence and role of DBS in the loan process. Regardless of that dispute, however, it is undeniable that the Debtor knew that Lane looked to him, and only him, for repayment of that loan, as the Debtor admitted in his deposition. *See* Debtor's Deposition, pgs. 25, 28, 31-33. Indeed, any assertion to the contrary is countered by the fact that the only document evidencing the debt, the cashier's check for $22,000.00, was made payable to the Debtor in his personal capacity. This conclusion is further substantiated by the multiple telephone calls made by Lane to the Debtor seeking repayment, *see* Debtor's Deposition, p. 24, as well as the multiple calls made by his agent, Bohannon. *See* Debtor's Deposition, p. 31. Furthermore, the Debtor did not produce any witnesses, such as Bailey, Eichholz, or Brown, whose testimony would have supported his argument that he had a good faith belief that he was not personally liable to Lane for the loan because the loan was the obligation of either DBS or its principals.[2]

---

[2] It is noteworthy that DBS is no longer in business.

Despite his knowledge that Lane looked to him alone for repayment, however, the Debtor elected not to schedule the debt, even as a disputed claim, or to disclose his bankruptcy case to either Lane or Bohannon. In such circumstances, the Debtor's disclosure of his bankruptcy case to Lane would have been the course of action most consistent with good faith and fair dealing, as Lane would then have had timely notice and a forum for the parties to finally resolve any and all disputes over the loan. Having elected non-disclosure, however, the Debtor effectively foreclosed such a procedure from timely taking place, and thereby continued to frustrate Lane's ongoing collection efforts. Ironically, through his motion to reopen and schedule Lane, the Debtor now seeks to do what he had the opportunity to do while his Chapter 7 case was open and being administered. His delay, however, has resulted in circumstances changing adversely for Lane in that DBS is now out of business, so any remedy that he could have asserted earlier against DBS has been made more difficult and has possibly been precluded.

Because I conclude that the Debtor has not demonstrated that he acted in good faith in failing to schedule Lane while his Chapter 7 case was open, I deny his motion to reopen. Of course, this decision does not prevent the Debtor from attempting to assert the bankruptcy discharge order as an affirmative defense in another forum, such as state court. See In re Kicklighter, 1998 WL 34064500, at *1 (Bankr. S.D. Ga. 1998) (Davis, J.) ("If the case is not reopened, then the dischargeability issue will not be decided in a federal forum. In the absence of reopening, Debtor's only possible remedy is to assert her discharge in state court as an affirmative defense."). In addition, this decision does not foreclose the Debtor

from asserting potential contribution or indemnification claims against other parties, including DBS and/or its owners.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Debtor's motion to reopen is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This ___ day of August, 2007.